1
2
3
4
5
6
7
8
9
10              **UNITED STATES DISTRICT COURT**
11                  EASTERN DISTRICT OF CALIFORNIA
12                          —o0o—
13
14
   GREGORY DICKERSON,              )   1:02 CV 06165 OWW JMD (HC)
15                                 )
                Petitioner,        )   FINDINGS AND RECOMMENDATION
16                                 )   REGARDING PETITION FOR WRIT OF
        v.                         )   HABEAS CORPUS
17                                 )
                                   )
18  D. WINNETT, Warden,            )   [Document #1]
                                   )
19              Respondent.        )
   _____)
20

21          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

22  pursuant to 28 U.S.C. § 2254.  This action has been referred to this court pursuant to 28 U.S.C.

23  § 636(b)(1) and Local Rule 72-302.

24                          PROCEDURAL HISTORY

25          Petitioner is currently in the custody of the California Department of Corrections pursuant to

26  a judgment of the Superior Court of California, County of Fresno, following his convictions by jury

27

28

    ed                              1

1   trial on October 7, 1998, for second degree robbery (Pen. Code § 211[1]), grand theft of personal

2   property (Pen. Code § 487(a)), and conspiracy to commit grand theft (Pen. Code §§ 182(a)(1),

3   487).  In addition to these counts, two prior serious felony convictions and three prior prison terms

4   were alleged and found to be true.  On November 10, 1998, Petitioner was sentenced to a total term

5   of sixty-one (61) years to life imprisonment.

6          On March 10, 1999, Petitioner timely filed a notice of appeal with the California Court of

7   Appeal, Fifth Appellate District (hereinafter "5[th] DCA") alleging various state law and federal

8   constitutional errors, including those raised in the instant Petition.  On January 23, 2001, The 5th

9   DCA rejected Petitioner's claims and affirmed his conviction except with respect to the grand theft

10  conviction which was found to be a necessarily included offense to his robbery conviction.  *See*

11  Answer, Ex. 4.[2]

12         On February 23, 2001, Petitioner filed a petition for review before the California Supreme

13  Court.  The California Supreme Court denied said petition on April 18, 2001.  Ex. 6.

14         Between December 18, 2001, and June 12, 2002, Petitioner pursued collateral relief in state

15  court.  Petitioner's petition for writ of habeas corpus before the Supreme Court for the County of

16  Tulare was denied on January 22, 2002.  His petition for writ of habeas corpus before the 5th DCA

17  was denied on April 11, 2002.[3]

18         On September 23, 2002, Petitioner filed his original federal habeas corpus petition in this

19  Court.  Petitioner filed his "2-Amended Petition"[4] on April 25, 2003, alleging three grounds for

20  relief: (1) Abuse of discretion in denying Petitioner's motion for substitute counsel; (2) Abuse of

---

22     [1]  All statutory references are to the California Penal Code unless otherwise indicated.

23     [2]  All subsequent exhibit references are to the exhibits attached to Respondent's Answer, unless otherwise

24  noted.

25     [3]  In a footnote, Respondent notes that the present Petition may be untimely.  Answer at 2-3, n. 2, citing 28

26  U.S.C. § 2244(d)(1)(A).  However, because Petitioner's round of petitions for collateral relief in state courts tolled
    the statute of limitations, the present Petition is not time-barred.  See 28 U.S.C. § 2244(d)(2); Carey v. Saffold, 536

27  U.S. 214, 220 (2002); Biggs v. Duncan, 339 F.3d 1045 (9th Cir. 2003); Nino v. Galaza, 183 F.3d 1003, 1006-07 (9th
    Cir. 1999).

28     [4]  All citations to "Pet." refer to Petitioner's April 25, 2003 "2-Amended Petition."

1  discretion in denying Petitioner's motion for a one-day continuance to locate a missing witness; and

2  (3) Insufficient evidence to support a finding of serious prior conviction for purposes of sentence

3  enhancement.

4        On September 17, 2003, Respondent filed an answer to the petition.  Petitioner did not file a

5  traverse.

6  FACTUAL BACKGROUND

7        The Court adopts the facts as summarized by the 5th DCA in its opinion dated January 23,

8  2001:

9        Outside of a Visalia grocery store, 67-year-old Faye Burnworth was approached by a
professionally dressed woman later identified as Nancy Smith.  Smith called herself "Brenda

10  Wilson" and claimed to be a courier for Glendale Federal Bank.  Smith explained that she had just
found a "packet" and was trying to locate its owner.  However, she was late for work and needed

11  someone to confirm her story to her employer, "Mr. Johnson."  Smith asked Burnworth to
accompany her to a pay phone and speak to Mr. Johnson.  Burnworth agreed to do so.

12        Smith dialed a number, asked for Mr. Johnson, and then explained why she was late for
work.  Burnworth was handed the phone and confirmed Smith's story to the man on the other end of

13  the line.  At Mr. Johnson's request, Burnworth gave the phone back to Smith.  Smith then opened
the packet and stated "'Oh, my,'" "'there's money in here.'"  Burnworth saw what appeared to be a

14  pile of money and a note.  The note indicated that the owner was sending $88,000 to a brother to
avoid having to pay taxes on it.  At Smith's urging, Burnworth spoke to Mr. Johnson again.

15  Burnworth thereafter agreed to drive Smith to the bank so that Mr. Johnson could check the
currency's serial numbers and contact the police.

16        After they arrived at Glendale Federal Bank, Smith took the packet inside.  A few minutes
later Smith returned and suggested that they go to a nearby McDonald's to wait for Mr. Johnson to

17  check on the money.

18        Smith called Mr. Johnson 10 or 15 minutes later from the McDonald's pay phone.  Smith
asked Mr. Johnson what she should do and then listed her bank accounts and their balances.

19  Thereafter, Burnworth got on the line.  Mr. Johnson asked Burnworth about her own bank accounts
and Burnworth gave him the information he requested.  Mr. Johnson then told Burnworth that no

20  one had claimed the money and for that reason there would be a finder's fee.  Smith and Burnworth
were each to receive $40,000.  However, Mr. Johnson needed $5,000 for taxes.  Mr. Johnson asked

21  Burnworth if she could get the money and give it to him at the bank.  He said he would record the
serial numbers and then return this money to Burnworth.  Smith pleaded with Burnworth to help and
Burnworth agreed.

22        Burnworth withdrew $5,000 from her credit union account per Mr. Johnson's instructions.
Burnworth believed they would then proceed to Glendale Federal Bank.  However, Smith instructed

23  Burnworth to drive back to McDonald's.  Burnworth became suspicious and refused.  Instead, she
stopped at a service station.  From this service station, Smith used a pay phone to call Mr. Johnson.

24        While on the phone with Mr. Johnson, Smith instructed Burnworth to place the $5,000 in a
satchel.  Burnworth did so but insisted on holding the satchel herself.  Smith tried unsuccessfully to

25  wrest the satchel away from Burnworth.  Smith hit Burnworth's hands with the telephone and bit
Burnworth's thumb.  However, Burnworth tenaciously held on.  Burnworth did not let go of the

26  satchel until the car Smith had gotten into accelerated and dragged Burnworth for 15 to 20 feet.
Burnworth never recovered her money.

27        One of the service station employees obtained a partial license plate number for the vehicle
Smith fled in.  With that and a general description, the investigating officer determined that the car

28  had been sold to appellant 10 days before this incident.  The car was thereafter found in a wrecking

ed

yard without license plates.  Nevertheless, appellant was listed as the seller.  Evidence linking appellant with the car was found inside the vehicle.

Nancy Smith testified under an agreement with the prosecution.  Smith agreed to testify truthfully and cooperate with law enforcement in exchange for the robbery charge being reduced to grand theft.  Smith confirmed Burnworth's version of the events.  In addition, Smith explained the setup of the scheme, described how and why she participated in it, and identified appellant as Mr. Johnson.

Smith had met appellant in Rialto, California, while visiting he friend, Terry Valmore, approximately two months before the Burnworth swindle took place.  Valmore was appellant's girlfriend.  At that time, Smith had neither adequate housing nor money.  Appellant was aware of Smith's problem and told her that he knew how she could make some money.

Shortly thereafter, appellant began Smith's indoctrination.  He explained the "scam" to Smith and what her part would be.  Appellant stated that either he or his father, Edward Dickerson, Sr., would play the part of Mr. Johnson while the other would ride in the car with Smith.  Appellant then introduced Smith to Edward, who provided additional instruction and bought Smith the outfit she wore for the Burnworth swindle.

Smith's training also included observation.  On two occasions, Smith accompanied appellant and a woman named "Kim" to various locations where Kim tried the scam on elderly women.  During these attempts, appellant explained what was going on and instructed Smith on how to succeed.  Appellant stayed in contact with Edward by cellular phone while Edward waited to play the part of Mr. Johnson.

Smith testified that on the day she approached Burnworth, appellant was slated to take the Mr. Johnson role.  Consequently, once contact was made, appellant directed Smith's activities from Valmore's residence in Rialto.  After Smith and Edward returned to Rialto, appellant and Edward gave Smith $500, $700 or $750 and then split the balance of Burnworth's money between them.

When appellant and Smith were both in custody, Smith received a letter from appellant.  In this letter, appellant blamed Smith for the loss of his car and of his freedom.  Appellant also made incriminating references to the scheme.  For example, appellant stated.

> "'Now, as far as the car, they can't prove a conspiracy by saying that you were in
> Fresno the night before.  I'm not trying to go there, but Terry [Valmore] did say that
> she loaned you the car on that morning, but I got the bitch quiet for now.'"

Phone records confirmed that calls were made from the pay phones in Visalia as described by Smith and Burnworth to a phone listed to appellant's address in Rialto.  Cellular phone calls between Visalia and Rialto were also documented.

## DISCUSSION

I.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly the Court has jurisdiction over this action.

ed

1   On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

2   1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

3   Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied*, 522 U.S. 1008 (1997); Jeffries v. Wood, 114

4   F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996),

5   *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S.

6   320 (1997) (holding AEDPA only applicable to cases filed after its enactment).  The instant petition

7   was filed after the enactment of the AEDPA and is therefore governed by its provisions.

8   II.  Standard of Review

9   This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

10  custody pursuant to the judgment of a state court only on the ground that he is in custody in

11  violation of the Constitution or laws or treaties of the United States."  28 U.S.C . § 2254(a).

12  The instant petition is reviewed under the provisions of the AEDPA.  Lockyer v. Andrade,

13  538 U.S. 63, 70 (2003).  Under the AEDPA, a petition for habeas corpus will not be granted unless

14  the adjudication in question "resulted in a decision that was contrary to, or involved an unreasonable

15  application of, clearly established Federal law, as determined by the Supreme Court of the United

16  States" or "resulted in a decision that was based on an unreasonable determination of the facts in

17  light of the evidence presented in the State Court proceeding."  28 U.S.C. § 2254(d); *see* Lockyer,

18  538 U.S. at 70-71; Williams, 529 U.S. at 413.

19  As a threshold matter, this Court must "first decide what constitutes 'clearly established

20  Federal law, as determined by the Supreme Court of the United States.'"  Lockyer, 538 U.S. at 71,

21  *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining "clearly established Federal law," the Court looks

22  to the "holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the relevant

23  state-court decision."  Id., *quoting* Williams, 592 U.S. at 412.  "In other words, 'clearly established

24  Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the

25  Supreme Court at the time the state court renders its decision."  Id.

26  Finally, this Court must consider whether the state court's decision was "contrary to, or

27  involved an unreasonable application of, clearly established Federal law."  Lockyer, 538 U.S. at 72,

28  *quoting* 28 U.S.C. § 2254(d)(1).  "Under the 'contrary to' clause, a federal habeas court may grant

the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; *see also* Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

This Court may not issue the writ simply because in its independent judgment the state court decision applied clearly established federal law erroneously or incorrectly; for a writ to issue, 'that application must also be unreasonable." Id. At 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable." Id. At 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, ninth circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See* Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th cir. 1999).

AEDPA requires that this court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Moreover, we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

III.  Review of Petitioner's Claims

A.  Ground One: Abuse of Discretion (Denial of Motion for Substitute Counsel)

Petitioner asserts that the trial court's denial of his request for substitute counsel violated his rights to effective assistance of counsel and due process under the Sixth and Fourteenth Amendments to the United States Constitution. Pet. 4, 11, 16-17. Petitioner further asserts that he was denied due process in not being permitted fully to state his reasons for seeking new counsel. Id. at 11, 18-19.

1.  Factual Background[5]

On the second day of the three-day trial, appellant sought to discharge his appointed counsel on the ground of inadequate representation.  At the ensuing <u>Marsden</u> hearing (<u>People v. Marsden, 2 Cal.3d 118 (1970)</u>), appellant focused primarily on counsel's failure to ensure that Terry Valmore would honor the subpoena and appear.  Appellant urged the court to appoint substitute counsel on the ground that Valmore's testimony was "crucial."

The court then looked to defense counsel for his perspective on the situation.  Counsel explained that Valmore had been served but that so far she had not complied with the subpoena.  Counsel noted that based on what appellant had told him, Valmore was "a potentially very critical witness."

At this juncture the trial court inquired as to why the trial had commenced.  The court advised that it would have granted a continuance if it had known there were witness problems.  In response, counsel apologized.  Counsel referred to himself as "an eternal optimist" but thereafter stated that he "really thought this person would honor the subpoena."  Counsel further explained that he did not "like announcing I'm not ready if I have somebody served and it looks like they're going to be there."

Appellant also complained that, although he gave defense counsel Valmore's telephone number, counsel still failed to reach Valmore.  Counsel had told appellant that the number was disconnected. However, when appellant tested the number by having someone else at the jail call, that caller got through to Valmore's daughter.  According to the daughter, Valmore was not there.

In response to this discrepancy, the court instructed defense counsel to confirm the accuracy of the number with appellant and to place the call again.  Counsel indicated it was the number he had tried both the day before and earlier that morning.  Counsel then dialed the number and heard the same recorded message.

Thereafter, the trial court denied appellant's <u>Marsden</u> motion.  The court stated "It appears to me that [defense counsel] is working on this case, he has served this witness.  He can't help it if this witness doesn't show up."  The court subsequently issued a warrant for Valmore's arrest.  The prosecution had also been unable to locate Valmore for this trial.

Despite the warrant and law enforcement's attempt to serve it, Valmore was not found.  Defense counsel's request for a one-day continuance was denied.  Thus, the trial concluded without Valmore's testimony.

2.  State Court Review of Petitioner's Claim

This claim was first presented on direct appeal to the Fifth DCA.  The Fifth DCA denied the claim on January 25, 2001 in a reasoned opinion.  *See* Ex. 4.  The claim was then presented to the California Supreme Court in a petition for review and summarily denied on May 1, 2002.  *See* Ex. 6.  The California Supreme Court, by its "silent order" denying review of the 5th DCA's decision, is presumed to have denied the claim presented for the same reasons stated in the opinion of the 5th DCA.  <u>Y1st v. Nunnemaker, 501 U.S. 797, 803 (1991)</u>.

In his brief to the Fifth DCA, Petitioner argued that the trial court erred because:  (1) his counsel had failed to inform the court on the first day of trial that Valmore had not complied with the subpoena; (2) At the time of the <u>Marsden</u> hearing counsel had a conflict of interest; and (3) the

---

[5]These facts are derived from the factual summary in the opinion of the 5th DCA.  *See* Ex. 4.

trial court did not give him a full opportunity to make his case for new counsel.

The Fifth DCA rejected Petitioner's claim, finding that the trial court had acted within its discretion in determining that defense counsel had represented him diligently and competently. The appellate court noted that under state law counsel was entitled to rely on the fact that a witness would comply with a subpoena, absent information to the contrary. Ex. 4 at 8, citing Gaines v. Municipal Court, 101 Cal.App.3d 556, 559 (1980). The court further noted that, given counsel had attempted to reach the witness but had been unable due to the telephone number no longer being in service, and that the prosecution had similarly been unable to locate the witness, it was "extremely unlikely that substituting counsel would have secured the attendance of this recalcitrant witness." Id.

With regard to the conflict of interest claim, the Fifth DCA noted that it is always the case that when a defendant requests substitute counsel an awkward situation arises, since the attorney must defend against charges brought by the client he or she represents. Id. However, this alone cannot form the basis for granting a motion for substitute counsel, or else a defendant would effectively be entitled to new counsel on demand. Id. at 9.

Finally, with regard to Petitioner's claim that the trial court failed to give him an adequate opportunity to be heard on his grounds for seeking new counsel, the court noted that a trial court must allow a defendant to relate specific instances of conduct in support of his claim of counsel's incompetence or lack of diligence. Petitioner was able to state the "broad grounds" for his dissatisfaction. Id. He was not, however, permitted to elaborate on the importance of Valmore as a witness.[6] The Fifth DCA stated that, even assuming the court prevented Petitioner from speaking about what Valmore might testify to, this was irrelevant in the context of his request for substituted counsel. The relevant inquiry was whether counsel had been diligent in his attempts to secure her attendance. Petitioner was given adequate opportunity to be heard regarding his counsel's attempts

---

[6] The following exchange took place during the Marsden hearing:
"THE DEFENDANT: ...I have one witness to testify on my behalf, that's the only one. That's the one who knows more about this issue than she does, because both of them sit down and discussed it. He brung it to her first.
"THE COURT: I don't want you to be making any comments about the case here, okay."

1    to contact her, so his claim of trial court error was denied.  Id. at 9-10.

2    3.  Analysis of Petitioner's Claim

3           A criminal defendant has a right to legal representation under the Sixth Amendment as

4    applied to the states by the Due Process Clause of the Fourteenth Amendment.  Powell v. Alabama,

5    287 U.S. 45 (1932).  The Sixth Amendment's right to counsel requires effective assistance by an

6    attorney, which has two components: competence and conflict-free representation.  Wood v.

7    Georgia, 450 U.S. 261 (1981).

8            In order to obtain relief for ineffective assistance of counsel, Petitioner must show "both that

9    counsel 'was not functioning as the 'counsel' guaranteed...by the Sixth Amendment,' and that the

10   deficiency prejudiced him."  Smith v. Stewart, 140 F.3d 1263, 1268 (9th Cir. 1998) (quoting

11   Strickland, 466 U.S. at 687).  To meet the first showing, Petitioner must show "that counsel's

12   representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In

13   making this determination, this Court "must be 'highly deferential,' avoid 'the distorting effects of

14   hindsight,' and 'indulge in a strong presumption that counsel's conduct falls within the wide range

15   of reasonable professional assistance."  Smith, 140 F.3d at 1268 (quoting Strickland, 466 U.S. at

16   689).  To demonstrate prejudice, Petitioner must show that counsel's errors "were so serious as to

17   deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 687.

18   There must be "a reasonable probability that, but for counsel's unprofessional errors, the result of

19   the proceeding would have been different."  Id. at 694; see also Brecht v. Abrahamson, 507 U.S.

20   619, 637 (1993) ("[H]abeas petitioners may obtain plenary review of their constitutional claims, but

21   they are not entitled to habeas relief based on trial error unless they can establish that it resulted in

22   actual prejudice.").

23          The state courts' determination of this issue was not contrary to, or an unreasonable

24   application of clearly settled Supreme Court law.  Petitioner's basis for asserting a Sixth

25   Amendment violation is his counsel's failure to secure the testimony of witness Terry Valmore at

26   trial.  However, as noted by the Fifth DCA, Petitioner's counsel *had* taken steps to secure Valmore's

27   testimony.  Counsel had subpoenaed Valmore, and had no reason to believe that she would not

28   appear to testify.  Counsel attempted to contact Valmore via the telephone number given by

1   Petitioner, but the number was disconnected.  This inability to contact Valmore via telephone was

2   confirmed before the trial court at Petitioner's Marsen hearing.  Nor was defense counsel alone in

3   being unable to locate this witness.  The prosecution had similarly been unsuccessful in its efforts to

4   find her, as were the police when they attempted to serve her with a warrant the evening following

5   the Marsen hearing.  Given this, we cannot conclude that the state courts were unreasonable in

6   finding that Petitioner's counsel acted within the bounds of reasonable professionalism.

7        Petitioner couches his Sixth Amendment claim as being based on a "conflict of interest"

8   between himself and counsel.  A conflict of interest typically arises when defense counsel represents

9   multiple defendants or otherwise has divided loyalties.  This is not such a case.  Instead, Petitioner

10  claims that because of the failure to secure Valmore's testimony at trial or promptly to seek a

11  continuance, his counsel was "so situated that the caliber of his services was likely to be

12  substantially diluted."  Pet. at 10 (citing People v. Hardy, 2 Cal.4th at 135-36).[7]

13       Even in the absence of overt competing interests, there are times when the attorney-client

14  relationship breaks down so far that the accused is deprived of the effective assistance of any council

15  whatsoever.  See, e.g. Brown v. Craven, 424. F.2d 1166, 1169-70 (9th Cir. 1970) (citing Entsminger

16  v. Iowa, 386 U.S. 784 (1967); Gideon v. Wainwright, 372 U.S. 335 (1963)).  However, "the

17  essential aim of the Amendment is to guarantee an effective advocate...rather than to ensure that a

18  defendant will inexorably be represented by the lawyer he prefers."  Wheat v. United States, 486

19  U.S. 153, 159 (1988).  The Sixth Amendment guarantees effective assistance of counsel, not a

20  "meaningful relationship" between the accused and his counsel.  Morris v. Slappy, 461 U.S. 1, 14

21  (1983).  The test is not whether the trial court abused its discretion in denying the request for new

22  counsel, but whether "the conflict between [Petitioner] and his attorney had become so great that it

23  resulted in a total lack of communication or other significant impediment that resulted in turn in an

24  attorney-client relationship that fell short of that required by the Sixth Amendment."  Schnell v.

25  Witek, 218 F.3d 1017, 1026 (9th Cir. 2000) (en banc).

26

27       [7]In Hardy, Defendant's counsel was "so situated that the cailber of his services may be substantially diluted"
     by virtue of being named a defendant in a lawsuit filed by the person he was representing.  No such "personal

28  interest...independent of, and in some respects in conflict with, [Petitioner's] interest in obtaining a judgment of
     acquittal" exists on the facts here.  Id., quoting Smith v. Lockhart, 923 F.2d 1314, 1321 (8th Cir. 1991).

1    Petitioner's dissatisfaction with his counsel's efforts to secure the testimony of Terry

2    Valmore does not amount to a deprivation of his Sixth Amendment right to counsel.   Petitioner and

3    his counsel had been in communication regarding Petitioner's defense.  Counsel was aware of

4    Valmore and the potential importance of her testimony.  He had sought to secure her testimony at

5    trial by securing a subpoena.  He had, in response to Petitioner's request, called Valmore's last

6    known telephone number, all to no avail.[8]  In short, the relationship between counsel and Petitioner

7    had not degraded to the point where, for Sixth Amendment purposes, he was denied the effective

8    assistance of counsel.[9]

9    Nor can the Court support a finding of irreconcilable conflict simply based on Petitioner's

10   request for substitute counsel.  To permit this alone to be the basis of a finding of irreconcilable

11   conflict would effectively be to grant a criminal defendant an unfettered right to disrupt trial at any

12   point and receive new counsel on demand.  See Ex. 4 at 8-9 ("[A] conflict of interest caused by a

13   Marsen motion cannot be the basis for granting that motion.  Otherwise, a defendant could indirectly

14   obtain what he is not entitled to, i.e., substitute counsel on demand."); see also United States v.

15   Moore, 159 F.3d 1154, 1158 (9th Cir. 1998) ("Finding an actual conflict from a mere threat [of

16   malpractice suit] would allow defendants to manufacture a conflict in any case.").

17   Moreover, Petitioner's Sixth Amendment claim must be viewed "in light of the strength of

18   the government's case.  Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986).  The

19   government's case against Petitioner was strong.  The testimony of witness Smith was corroborated

20   by that of the victim.  The government also presented evidence in the form of phone records from

21   pay phones used by Smith to Petitioner's residence, as well as cell phone records.  The government

22   was able to link the vehicle used in the crime to Petitioner, and found the car in a wrecking yard, still

23   registered to Petitioner and with evidence linking him to the car inside.  In addition, the government

24   _____

25        [8]It is noteworthy that the prosecution had also sought and failed to locate Valmore, and that law

26   enforcement officers were likewise unable to locate her.

27        [9]Petitioner's case is easily distinguishable from cases where an irreconcilable conflict *was* found to exist,
     i.e. where the relationship was marred by quarrels, bad language, threats and counter-threats (United States v.

28   Williams, 594 F.2d 1258, 1260 (9th Cir. 1979)), or where defendant refused to communicate at all with counsel.
     (Brown v. Craven, 424 F.2d 1166).

ed                                            11

had evidence in the form of an incriminating letter written by Petitioner to Smith while in custody. This Court cannot say based on the record before it that but for counsel's actions there is a "reasonable probability...[that] the result would have been different."  Strickland, 466 U.S. at 687-91.

        In addition, in reviewing the state  courts' rejection of Petitioner's claim, this Court takes into account the impact that last-minute motions seeking to discharge counsel have on the orderly process of justice.  Chaidez v. Knowles, 258 F.Supp.2d 1069, 1083 (N.D. Cal., 2003) (citing Morris, 461 U.S. at 11-12, 14-15) (trial courts have broad discretion regarding the decision to grant or deny a request for continuance, including where invocation of 6th Amendment right to counsel may disrupt trial proceedings); (United States v. Castro, 972 F.2d 1107, 1109 (9th Cir. 1992) (motion to substitute counsel 3 days before trial deemed untimely).  Petitioner made his request only after trial had begun.  The trial court conducted an appropriate inquiry, in which Petitioner was permitted to state the broad grounds for his dissatisfaction with counsel.[10]  While not without criticism of defense counsel, the trial court found that counsel's actions on behalf of Petitioner constituted adequate representation.  Granting the Marsden motion would have necessitated a continuance for Petitioner to secure new counsel, after the jury had been empaneled and had heard significant testimony on the case.  Under these circumstances we cannot find that the decision to reject Petitioner's request for substitute counsel resulted in a violation of his Sixth Amendment right to counsel.

        B.        Ground Two:  Denial of Petitioner's Motion for a One-Day Continuance

        In his second ground for relief, Petitioner alleges that the trial court's denial of his motion for a one day continuance in order to secure the presence of Terry Valmore as a witness in his defense violated his Due Process right to present a defense.

        1.        Factual Background

        As noted above, Terry Valmore failed to comply with a subpoena to appear at appellant's

_____

        [10]Petitioner also claims error in that the trial court did not permit him to go into detail as to the substance of Valmore's expected testimony during his Marsden hearing.  We concur with the Fifth DCA that the substance of Valmore's testimony was irrelevant to the question at hand – namely, whether Petitioner's counsel had taken adequate steps to secure Valmore's availability as a witness.  See Ex. 4 at 9-10.

trial.  Neither the defense nor the prosecution was able to locate her.  Following the *Marsen* hearing on the second day of trial, the court issued a warrant for Valmore's arrest.  However, law enforcement's attempt to arrest Valmore was unsuccessful.

On the morning of the third and last day of trial, appellant requested a one-day continuance to permit the search for Valmore to continue.  The trial court denied appellant's motion.  The court noted that before trial started the defense announced it was ready.  Further, efforts had been made by law enforcement on appellant's behalf.  When the court asked counsel if he had sent his investigator out to find Valmore, counsel responded that he had not.  Counsel stated he did not think his investigator would "find any better results than the police have."

     2.     State Court Review

Petitioner first raised this claim before the Fifth DCA.  Petitioner argued that the refusal to grant an extension was an abuse of discretion, claiming that Valmore's testimony would have conflicted with that of an existing prosecution witness (Nancy Smith) thereby weakening the state's case, and that there was a reasonable probability Valmore would have been located given the additional time.

Citing California law, the Fifth DCA noted that a request for a continuance in the midst of trial "rests within the sound discretion of the trial court," and is not to be overturned absent "a clear abuse of discretion."  Ex. 4 at 11.  With respect to a missing witness, the Fifth DCA noted a trial court is entitled to take steps to prevent unwarranted delay in criminal prosecutions.  Id.  in order to prevail, an appellant must establish both that the evidence necessitating the continuance is material, and that the evidence could be obtained within a reasonable time.  Id.

The Fifth DCA went on to reject Petitioner's claim because it was not based on "either evidence or argument to support his position that Valmore could be found in one more day," but rather on "unfounded optimism."  The court noted that in contrast to Petitioner's optimism, the evidence presented to the trial court pointed to the futility of a continuance.  "The efforts of the prosecution, the defense and the police to locate Valmore had all failed.  Valmore's last known telephone number was no longer in service.  Appellant's claim that it 'is reasonably probable that an additional one-day continuance would have produced Valmore' is based on nothing more than pure speculation."  Id.

     3.     Analysis of Petitioner's Claim

A criminal defendant has a constitutional Due Process  right to present his defense to the

1   jury.  Washington v. Texas, 388 U.S. 14, 19 (1967).  However, the trial court has broad discretion

2   when it comes to procedural matters such as granting or denying a request for a continuance.  Morris

3   v. Slappy, 461 U.S. 1 (1983).  The trial court's decision to grant or deny a continuance will not be

4   disturbed on appeal absent clear abuse of that discretion.  Id.; see also United States v. Flynt, 756

5   F.2d 1352, 1358, amended, 764 F.2d 675 (9th Cir. 1985).  No strict test exist to determine abuse of

6   discretion in denying a continuance.  See, e.g., Ungar v. Sarafite, 376 U.S. 575 (1964), rehearing

7   denied 377 U.S. 925 ("There are no mechanical tests for deciding when a denial of a continuance is

8   so arbitrary as to violate due process.  The answer must be found in the circumstances present in

9   every case, particularly in the reasons presented to the trial judge at the time the request is denied.").

10  To reverse a trial court's denial of prejudice, an appellant must show that the denial prejudiced his

11  defense, and must set forth the substance of witness testimony he would have obtained if given more

12  time.  United States v. Lewis, 991 F.2d 524, 528, amended (9th Cir.), cert. denied, 510 U.S. 878,

13  114 (1993).

14          This Court rejects Petitioner's claim for relief.  Under the circumstances in which the request

15  for continuance was made, the trial court's denial of the request was not an abuse of discretion "so

16  arbitrary as to violate due process." Ungar, 376 U.S. 575.  Petitioner claims that it was "reasonably

17  probable" that the missing witness would be located given a continuance.  However, this Court

18  agrees with the Fifth DCA that this claim is "based on nothing more than pure speculation."  Ex. 4

19  at 11.  To the contrary, the record at trial indicates that it was highly unlikely that a single day's

20  continuance would have secured Valmore's presence.  See Flynt, 756 F.2d at 1359 (one factor in

21  determining whether continuance is required is "how likely it is that the need for a continuance

22  could have been met if the continuance had been granted.").  Both Petitioner's counsel, the

23  prosecution, and the police attempted in vain to locate Valmore.  She had been subpoenaed to testify,

24  and the trial court had already issued a warrant for her arrest for failing to cooperate with the

25  subpoena.  In addition to phone calls to her last known telephone number – which, as demonstrated

26  during the Marsden hearing was no longer in service – police had attempted the previous evening to

27  locate Valmore and serve her with the warrant issued by the trial court.  Petitioner's only suggested

28  method of contacting Valmore was a telephone number which, when called during the Marsden

14

hearing, proved to be out of service.

Petitioner fails to demonstrate the requisite prejudice for habeas relief.  Given the failure of the efforts already expended to locate Valmore at the time the request was made, the trial court was well within its discretion to conclude that a one day continuance was not warranted.  Therefore, Petitioner's claim for relief is rejected.

III.    Ground Three: Insufficient Evidence to Support a Finding of "Serious Felony"

1.    Factual Background

The information alleged that appellant had suffered two prior serious felony convictions, robbery in 1990 and attempted robbery in 1993.  It was further alleged that appellant had served three prior prison terms.  The trial was bifurcated and these allegations tried by the court.  The court found these allegations to be true beyond a reasonable doubt.

To prove the 1993 attempted robbery conviction, the prosecution presented the abstract of judgment and the prison fingerprint card relating to that crime.  This abstract of judgment states appellant was convicted of "PC 664/211 ATTPD 1ST DEGREE BURGL" However, section 211 defines robbery, not burglary.  Thus, the abstract of judgment contains an error.

Appellant argues that, due to this discrepancy in the abstract of judgment, the evidence was insufficient to support the trial court's finding that appellant was convicted of attempted robbery in 1993.  According to appellant, because at least one of the entries on the abstract concerning the nature of the conviction is wrong, there can be no degree of confidence that appellant was convicted of either attempted burglary or attempted robbery.

2.    State Court Review

Petitioner first presented this claim on direct appeal before the Fifth DCA, which rejected his claim.  The Fifth DCA noted that under California law, a claim of insufficient evidence is reviewed by taking the whole record in the light most favorable to the judgment below to determine whether there is evidence that is "reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  Ex. 4 at 14-15 (citing People v. Johnson, 26 Cal.3d 557, 558 (1980).  There can be no reversal unless it clearly appears "that upon no hypothesis whatever is there sufficient substantial evidence to support it."  Id. (quoting In re Khamphouy S., 12 Cal.App.4th 1130, 1134 (1993).

The Fifth DCA noted that, although the abstract of the judgment mistakenly references attempted burglary, the Department of Corrections fingerprint card confirms that appellant was convicted of attempted robbery.  Ex. 4 at 15.  The court noted that the specific form of the offense listed on the fingerprint card (robbery of a person while using an automated teller machine) was not

ed

1  specified in the abstract, and that therefore the fingerprint card was not – as Petitioner had claimed –

2  simply based on the information contained in the incorrect abstract.  Therefore, the Fifth DCA

3  concluded that the fingerprint card independently and adequately supported the trial court's finding

4  of serious prior conviction.  Id.

5  3.      Analysis of Petitioner's Claim

6          In reviewing sufficiency of evidence claims, California courts expressly follow the standard

7  articulated by the Supreme Court in Jackson v. Virginia, 443 U.S. 307 (1979).  *See* People v.

8  Johnson, 26 Cal.3d 557, 575-578 (1980); *see also* People v. Thomas, 2 Cal.4th 489, 513 (1992).

9  Pursuant to the Supreme Court's holding in Jackson, the test in determining whether a factual

10  finding is fairly supported by the record is as follows:

11      "[W]hether, after reviewing the evidence in the light most favorable to the
        prosecution, any rational trier of fact could have found the essential elements of the
12      crime beyond a reasonable doubt."

13  Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).

14          Sufficiency of evidence claims are judged by the elements defined by state law.  Jackson,

15  443 U.S. at 324, n.16.  This Court must presume the correctness of the state court's factual findings.

16  28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).  This presumption of

17  correctness applies to state appellate determinations of fact as well as those of the state trial courts.

18  Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir. 1990).  Although the presumption of correctness does

19  not apply to state court determinations of legal questions or mixed questions of law and fact, the

20  facts as found by the state court underlying those determinations are entitled to the presumption.

21  Sumner v. Mata, 455 U.S. 539, 597 (1981).

22          This Court finds that Petitioner's claim is without merit.  Viewed in the light most favorable

23  to the prosecution, there is sufficient evidence upon which to sustain the trial judge's finding of a

24  prior conviction for attempted robbery.  Granted the abstract of judgment presented by the

25  prosecution as evidence of Petitioner's 1993 attempted robbery mistakenly referred to the conviction

26  as being for attempted burglary.  However, this abstract of judgment was not the sole piece of

27  evidence offered by the prosecution as evidence of the prior conviction..  As the Fifth DCA correctly

28  notes, the Department of Corrections fingerprint card details Petitioner's conviction for attempted

1   robbery.  Moreover the fingerprint card was not merely derivative of the abstract of judgment, as it

2   listed information (the specific nature of the robbery in question) not contained within the abstract.

3   The fingerprint card is adequate evidence upon which the trier of fact (in this case the trial judge)

4   could rationally have found that Petitioner had a prior conviction for attempted robbery.  As such,

5   Petitioner's insufficient evidence claim fails.

6

7                             **RECOMMENDATION**

8       Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas

9   corpus be DENIED and the Clerk of the Court be DIRECTED to enter judgment.

10       These Findings and Recommendations are submitted to the Honorable Oliver W. Wanger,

11   United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B)

12   and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District

13   of California.

14       Within thirty (30) days after being served with a copy, any party may file written objections

15   with the court and serve a copy on all parties.  Such a document should be captioned "Objections to

16   Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and

17   filed within ten (10) court days (plus three days if served by mail) after service of the objections.

18   The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c).

19   The parties are advised that failure to file objections within the specified time may waive the right to

20   appeal the District Court's order.  Martinez v. Y1st, 951 F.2d 1153 (9th Cir. 1991).

21

22

23

24   IT IS SO ORDERED.

25   **Dated:   July 5, 2007**                      **/s/ John M. Dixon**

26                                UNITED STATES MAGISTRATE JUDGE

27

28

ed